Our next case is number 23-1336, Sanho Corporation v. Kaijet Technology. This is number 23-1336, Sanho Corporation v. Kaijet Technology. Okay, Mr. Ludwig. Good morning. May it please the Court, this case involves important matters of statutory interpretation regarding Section 102B2B prior to which this Court has not addressed and which the Board in the below proceedings did not address either. These issues include, first, what does it mean to publicly disclose subject matter under Section 102B2B, particularly where the disclosure is not a publication? And, second, if an inventor has made a Section 102B2B disclosure that overlaps with but is not identical to a later prior art disclosure, how is that overlapping subject matter defined such that an orderly and validity analysis of the remaining subject matter can follow? I confess to being confused about what the facts are here. And you suggest, you offer two different interpretations of CUO as involving a single chipset or a that the hyperdrive shows a single chipset DTCM under that interpretation of CUO, which is a single chipset embodiment. And you say that on page 30 of your reply brief, but I don't see any support for that. Where is the support for the fact that the hyperdrive shows a single chipset embodiment? Your Honor, in the below proceedings, the appellant provided images of the circuit board. Tell me where, you know, where's the evidence? Your Honor, the evidence that the VSLI chipset constitutes a DTCM was not rebutted in the below proceedings. That's not the question. We're dealing with a difference between a single chipset DTCM and a multiple chipset DTCM. My question is assuming that CUO is a single chipset DTCM. Where is the evidence that the hyperdrive includes a single chipset DTCM? You make these sweeping statements and there's no support for it. Your Honor, the evidence submitted at the board included sworn declarations. Give me a page. Where is there evidence that the hyperdrive includes a single chipset? Are you thinking about the declarations that were provided? Yes. If you look at page A6090, there's a picture there, but it doesn't look like a single chip to me. I believe that the DTCM is framed in a red line. It's boxed in a red box on page A690, which seems to me, I believe. I'm sorry. Did you say 6090? Yes. Is this the figure you would be thinking of, A6090? No, Your Honor. That is not the figure. What supports this argument that you make on that page of the reply brief? There's no cite there. Your Honor, I believe that. The board indisputably doesn't cut it. That's not enough. Where's the evidence? I believe the evidence is presented in the opening brief, Your Honor. Our opening brief. For example, on page 10 of our opening brief, appellants identified the chip with a green box that corresponds to. Show me where in the appendix is the evidence that the hyperdrive is a single chip set and body. That page corresponds to appendix 745. Oh, sorry. 754? 754. 754? 754, Your Honor. Okay. Pointing to the same thing. Of course, the same green box as on page 10, right? Just another photograph. And what is this? It says right on it, A754 says demonstrative exhibit dash not evidence. How can you say that's the evidence? That's the evidence that was cited in that portion of the opening brief, Your Honor. Well, that doesn't make it evidence. On the other hand, at the page that I cited to you, which is A6090, this is a, I think it's your inventor's declaration. And there, the Thunderbolt 3 USB dash C is identified as the DTCM with a defined boundary that is distinct from other modules of the device. And it includes lots of stuff, not a single chip. Your Honor, the image on page 6090 identifies the various port units. The DTCM is the, depending on how it's interpreted, is the chip set or multiple chip sets on the circuit board. Okay, but you can't ask us to look at a photograph and interpret it. Where's your expert testimony that that shows a single chip set and that that's the hyperdrive? I mean, you can't come here and make statements like it's indisputably the case and you can't show any evidence to support it. Can I ask you a separate question? I mean, you can think about that one some more, but is it required that your, if you had a prior public disclosure, is it required that it disclose the claimed invention or is it required that it disclose the intervening prior under the statute? Your Honor, our interpretation is that the statute requires the inventor disclosure to disclose the relevant aspect of the claimed invention that the later prior art is then being used to disclose in the invalidity analysis. Does your claim require a single chip DTCM? The claims do not explicitly require a single chip DTCM. What did they require, just that it be something that's distinct from the other modules of the device? Yes, Your Honor, and the claim was also construed to require a defined boundary. A defined boundary. A defined boundary. I guess that's kind of another way of saying that it's distinct from the other modules. Correct, Your Honor. And the parties seem to agree that a single chip would satisfy that requirement, but it's not necessarily limited to a single chip. In the district court proceedings, for example, there were disputes regarding whether a portion of a circuit board could be a DTCM as well, as is contemplated in certain of the 429 patents figures. Now, I clearly see that the board relied on whether the alleged public disclosure disclosed a single chip as required by code. But I don't see where you complained that that was an incorrect analysis in your briefing. Your Honor, you're correct that the briefing focused on an interpretation that included a single chip in the hyperdrive. So there's kind of an assumption that we're going to just raise certain issues on appeal, and on this appeal we're really just going to focus on whether a sale could be a public disclosure, and the fact that the board didn't deal with that issue. Is that right? Correct, Your Honor, as well as how that sales disclosure maps onto the claims and onto quo as well. So, regarding the issue of what constitutes a Section 102 B2B public disclosure, this matter of statutory interpretation should be settled by reference to the language of Section 102 and the case law interpreting the meaning of the term public in pre-AIA Section 102. Why? The two provisions have entirely different purposes. There is precedent for applying the language of a prior version of the statute to the later. That's the question. There's a new provision in the statute here, and it has an entirely different purpose than the on-sale bar did, which is to say that the patent owner can avoid prior art by showing that he or she publicly disclosed the invention or the relevant part of the invention before the prior art. That's an entirely different purpose. The idea is that the patent owner made this available to the public, which is quite a different inquiry than the whole on-sale bar inquiry. Respectfully, Your Honor, I agree that the purpose of the statute is different, but it still uses the same language. It doesn't actually, does it? I mean, 102A says a whole list of things, doesn't it? I mean, 102A says the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public. And the on-sale has been interpreted by the Supreme Court, right? Yes, Your Honor. And then here, we've got a different provision, and it says has been publicly disclosed by the inventor, right? They're a different language. I mean, I understand there's some legislative history that says the intent was, at least, to have these two things be the same. But ultimately, what came out in the statute, which is the controlling thing, is different language. So how do you deal with that, with your argument today? Your Honor, the language public disclosure, or publicly disclosed, in Section 102B2B, in appellant's view, is an attempt to reference what would be prior art if it were disclosed by a third party, for example. It's not, the inventor's disclosure is not prior art. So the statute does not refer to prior art. It just leaves open the interpretation to all public disclosures. It does not answer the question of what a public disclosure is, which requires looking to- So you're suggesting that somehow the words public disclosure are supposed to be interpreted as covering everything in 102A1. Yes, Your Honor, that is correct. Because the statute refers to Section 102A1 disclosures to nullify them. Well, where does this get you? This gets you, doesn't it, to say that any sale qualifies as a public disclosure, right? Your Honor, not any sale constitutes a public disclosure. Any sale would- We know what we're talking about. Here, the event that you're claiming was a public disclosure, that's going to allow you to neuter, hopefully, part of this prior art reference was a sale. Yes, Your Honor, it was a sale. Importantly, it was a public sale because- Well, I think your argument is it's a Heisen sale qualifies. Excuse me? A sale, a single sale, privately to one person, not otherwise publicized in any way whatsoever. Your Honor, respectfully, it would not apply to a private sale. This was a public sale in the sense that there were no confidentiality expectations associated with sale. Not in any other respect was it public. Maybe an individual. It could have been made public, but it wasn't. Your Honor, the sale was, in effect, made public through the use of the Kickstarter website. The recipient of that sale, Mr. Chin, published on the Kickstarter website prior to Quo. Well, that's a different argument, and the board rejected that, right? The board rejected that the content that was posted to the Kickstarter website itself was an enabling disclosure of the hyperdrive. But the board did not address the issue that the disclosure on the Kickstarter website publicly disclosed the fact that the sale took place and showed the hyperdrive- Your Honor, is that in the record that you can point to us where the Kickstarter disclosure actually referenced the particular sale you're talking about? Didn't the board find that the Kickstarter campaign did not disclose all the elements of the invention? I mean, didn't disclose all the elements of Quo. Yes, Your Honor. The board found that the- specifically focusing on the images that were published on the Kickstarter website found that those images were not of sufficient resolution. So what does it matter? I mean, what I think you're saying is that there was a sale, and the Kickstarter campaign was the public disclosure of what was sold. Is that what you're saying? Correct, Your Honor. If the board already found that what was sold, what was described in the Kickstarter campaign wasn't sufficient to satisfy the requirements of the statute, and you haven't appealed that, then how can you rely on it now? Your Honor, we are relying on the Kickstarter campaign as evidence of the non-confidentiality of the sale. Daniel Chin- Will you show me on the record where in the Kickstarter campaign there is reference to the specific sale that you're relying on under the statute? Your Honor, the- Do you understand my point? Yes. You said earlier that there was a disclosure by this gentleman in the Kickstarter campaign of the fact that he had made the purchase. You said that to me. Well, Your Honor, and I apologize if I misspoke, but the- Is there any evidence that this sale happened, we know that, a sale to the individual? Was there any publicity regarding that sale to anyone? Your Honor- That's shown in the record? There- Yes or no? I'm not sure whether the record shows that Daniel Chin said specifically that he purchased it from the inventor. What he did do in the- Now, Judge Clement is asking you about whether the sale became public, the fact of the sale became public. Well, Daniel- Do you understand that question? If I understand you correctly- I sell something to you, right? We go out in the corner there and nobody else sees it and I sell you my book, right? Is that sale public? Yes or no? The sale, Your Honor, would be public if I selling you the book I did not expect for you to keep that sale private, that there was no confidentiality involved. Is there any other evidence? Your Honor, well, the analogy- I sell the book to you and I say, no restrictions on what you do with it, you can go ahead and make it public if you want to. Yes. But you don't. Respectfully, Your Honor, in this case, by analogy, I would have made the book public even though if I'm understanding your question correctly, so Daniel Chin, he received the hyperdrive, he published information about the hyperdrive. I don't believe he said- I don't want to use up all your time. My understanding of your argument to us is that a sale to qualify as a public disclosure under the statute needs to be a sale in which there is no restriction on anybody making it public. Yes. No restrictions on him. So long as he isn't restricted, it's one sale, nobody else in the world knows anything about it, it's public. That's your position. Correct, Your Honor, and that comes from the expert, Pete Lipton. Is there any evidence about what happened to the 14,000 products that were part of the sale? On the record. The 14,000- I think there were 14,000 devices, hyperdrives, right? Yes, Your Honor. No evidence about how they were used, who they were given to, nothing, right? Your Honor, well, the hyperdrive products I know were eventually sold into the general market. Is that in the record? Yes, that's what the record evidence was. I'm sorry. I'm not aware of anything at all in the record that talks about the 14,000 products and what happened to them. Your Honor, I don't believe that the record says- Because I can imagine circumstances where, say, maybe they were sold to others, maybe they were used by 14,000 people. I just don't know, but there's nothing in the record on that. Yes, Your Honor. I have another question for you, which is when we talk about whether a sale publicly disclosed the invention, does that mean that there has to be disclosure of the invention? Or is it a public disclosure of a sale, hey, this product was sold? Or is it public disclosure of the contours of what exactly the invention is, along with the sale? Your Honor, I believe that the statute requires a public disclosure of the relevant portion of the invention. Okay, thank you. Okay, we're out of time. We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Appellee Kajet finds itself in- I'm sorry, what is your name? Oh, sorry. My name is Ryan Gentis. Okay, thank you. I think it was mistakenly Mr. Ryan Gentis. Yeah, that's what- It happens a lot.       I think it was mistakenly Mr. Ryan Gentis. Yeah, that's what- It happens a lot. Go ahead. After the briefing was complete in this case, Kajet and Appellant Sanho came to an agreement, whereby Sanho gave Kajet a covenant not to sue on the 429 patent in order to dismiss all the claims related to the 429 patent from the district court litigation, which was stayed pending the outcome of this appeal. Because of that, Kajet no longer has any commercial interest in the validity of this patent. I am prepared to answer any questions related to the brief. We still stand by our brief, but are not aggressively advocating for them regarding the validity of this patent. Are there any other information? If the court would like me to provide- We're going to settle that, right? Yes. With respect to- Let's settle that. I have no interest. Yes. Your answer's right. Sorry? What is your view of what publicly disclosed means in this statute? I think that there was a concurring opinion from this court on Bonk on Heisen that described it very eloquently that they wouldn't need to say publicly disclosed if everything in 102A was a public disclosure. That would have been a redundant statement. They could have phrased it as anything in 102A done by the inventor would be enough to knock out a piece of prior art. But that's not what they said. They said publicly disclosed. The legislative history contemplated something akin to publication under pre-AIA-102 with the idea that they didn't want to limit it to printed publications in our digital age but still have sort of the same requirement that it be presented in a way that a person born or skilled in the art would have had an opportunity to access it. If you settled what you did, I thought there was a requirement notifying the PTO so they could intervene. Isn't that correct? The issue is that the case entirely did not settle. We came to an agreement and amended our complaints and our counterclaims to remove this case. If there was a requirement under those, these were very unusual circumstances. Was there anything in the settlement agreement about your continued participation in this case? No, there was actually no settlement agreement. There was no settlement agreement. The appellant gave us a unilateral covenant not to sue, which we had declaratory judgment actions related to the 429 patent. Did you agree that you were going to come here in court and not present a strong defense? Why are you getting up before the court and saying, oh, we've resolved things so I'm just here to answer questions? So we actually tried to waive our oral argument in order to appear. But what about my question? Why isn't the PTO here to defend the decision? I do not know. Were they notified? Is there an obligation to notify them? Not that I'm aware of. Because my experience in all these cases where there's a settlement or the one party no longer, where the petitioner no longer has an interest, the PTO is notified. They intervene and they defend the board's decision. That didn't seem to happen here. Maybe because it happens at the PTO. If you had settled the case entirely, would you have been obligated to notify the PTO? I believe that would have triggered certain obligations. We poured over the rules to try and find specifically what to do in this sort of unusual circumstance, whether or not we needed to withdraw our appeal, what happened to the IPR, and did not, I think because this is not the way things usually happen. What happened to the IPR? Was it dismissed? No. I think the IPR, as far as I understand the procedures, the IPR is complete and now is up on appeal. Right. And if you remand it back, then the IPR is now active again, and we'd have to figure out what happens in that circumstance. But my understanding is from the PTO standpoint, the IPR is closed. So can I ask you the same question that I asked? Yes. I want to know what is your view on what the public disclosure has to be of what? What subject matter are we talking about? Is it the public disclosure of the invention, the claimed invention, the inventor's invention? Since we are looking at the inventor's early disclosure. Right. Or is it public disclosure of what is in the intervening prior art? It's the latter. And I think the fact that the statute uses two different terms to describe what needs to be disclosed. In 102A, they talk about the claimed invention. And in 102B, they talk about the subject matter of the disclosure. But the subject matter of the disclosure is the subject matter that anticipates or renders obvious the claims, right? Yes. And I think had the disclosure of the hyperdrive been a disclosure of the claimed invention, this might have been a closer call. You can see the board say that it wasn't a disclosure of the invention. I saw them say it wasn't a disclosure of a single chip, which is what Quo had. Right. So there were a couple of times that they looked at this as far as comparing the hyperdrive to the claims. The one was in the 102B2B analysis. And the reason this single chip, multi-chip issue comes up is the way the claims are phrased. It's a DTCM that has to connect to certain things. And so based on the module construction that it needs to be a distinct piece, the hyperdrive, and actually the Q's device, has a series of chips that all interconnect in different ways and connect to different ports. And it doesn't map the exact wording of the claim where it's a single thing that connects to. Where is that in the board's decision? Sure. So the. So they discuss in talking about Quo. When they do their description of Quo. It's A0028. Sorry, that's Quan. A0029. They talk about having the number 22, which is the control system, and it talks about the various things that it connects to. And then when you get into the analysis, it discusses how that shows a DTCM operably connected to the various ports. My question is more about, not about Quo, but about the hyperdrive. Okay, so. I thought you were saying, and maybe I misunderstood, but I thought you were saying the board held that the hyperdrive doesn't map to the claim. So it definitely holds that with respect to it discusses the objective indica of non-obviousness. And in that it does explicitly say it doesn't map to the claims. That issue was focused on whether or not it has a main port module, which was the first element of the claim. And so they got there and they stopped. They said it doesn't have a main port module, so it doesn't map. So the board did compare it in its analysis. It looked at whether the hyperdrive disclosed the elements of Quo, regardless of what's claimed. Right. The question is whether it disclosed the elements of Quo that are being relied on as prior art for the obviousness analysis. Correct. And so the question is whether or not it showed, not only the appellant was talking about, it shows this VSI chip. And I know there's an issue over whether or not the record is clear on that. But regardless of whether or not it shows a single chip, it's the fact that it's a single chip operatively connected to the things that it needs to be operatively connected to. Why does the board say that? That's the question I had before. Right. And I am... There's a section where it goes through the 102 B2B analysis, where I believe it is discussed. It's eluding me at the moment. Let's see. Section 2E. Okay. So beginning on page A0039, they talk about, as you discussed before, they talk about the photos and whether or not the photos disclose the information. But I believe they... And I think they do in fact stop there. Yeah, they do. They say it doesn't disclose a single chip set DTCM. Do you think these claims require a single chip set DTCM? They require a module with a distinct boundary that has the correct connections. That's right. But it doesn't say a single chip set. It doesn't say single chip set. Theoretically, you could have, if you had a separate circuit board with a distinct boundary, you could have multiple chips on it. You need something that can qualify as a module that's the data transmission control module and all the connections coming to that. And that's what Kuo showed and combined with the Quan and O'Shea references rendered. A single chip set theory in code derives from the arrow pointed to the one chip, right? That's correct. And nothing else. There's wording in... Basically. There's wording in... The three other chips are regarded as just being on the drawing. Correct. I think there are a couple other things in the specification that qualify the wording of describing the different units. And then it says it has a... I believe it calls it a hub. It has these units and is attached to the board. And then also there are multiple embodiments where the control unit, number 22, has three different units or four different units. And they're not figures showing three... One labeled and two unlabeled and one labeled and three unlabeled. That's not disclosed. It's all just pointing to this number 22. And under the substantial evidence standard, that was a finding that the board made was that this was a single chip set. They say that explicitly and I think there's substantial evidence to support that finding. Is that fact enough alone for us to simply affirm? If there's nothing publicly disclosed... They're basically saying that they're not a single chip, right? Yes. They're trying to argue they are. There's no evidence they are. Yes. The subject matter asserted was a single chip. It doesn't mean showing you are one case is over. You don't qualify the neuter quote. Right. And I don't need to decide the nature of the sale. I don't need to decide whether this particular sale, assuming arguendo, it was a disclosure, it didn't do the trick. That seems inconsistent with the answer you gave me earlier because what I asked you is whether under the statute, you're supposed to compare the inventor's disclosure with the claim, with the subject matter that meets the claim, or whether you're supposed to look just at quote. I mean, the inventor, even if the inventor disclosed it, hypothetically, that in this case, they actually disclosed a multiple chip DTCM to the public and everything else in the claim. And let's assume for a minute that that satisfied the claim. Does it matter that quote would teach a single chip set? I think you need a single chip set or some other way of calling it something with a distinct boundary. My hypothetical is that it satisfies the claim. My hypothetical is that we're going to assume that something was disclosed that satisfies the claim. Yes. But it satisfies it as a multiple chip, particular boundary, every element of the claim. Right. It's multiple chips. And quote teaches a single chip, but they both satisfy the claim. Is it really true that the inventor's disclosure has to have a single chip? No. I think as long as it what we use quo to disclose was a module connected to these things. The way that it is a module is that it is a single chip set. If there was a disclosure of a module, even in some other fashion, I think that would disqualify. Assuming it's public. The question is not comparing the disclosure to the claims of the patent. The comparison is comparing it to quo and what you relied on quo for. Exactly. That's precisely the issue. But did you rely on quo as a single chip? We did for the reason that a single. Exactly. Did you cite something in quo that says quo says I'm a single chip? And that's the priority you're citing against these people? It did not. There's no explicit word in quo that says this is a DCCM with a single chip set. The specific pieces of quo that you relied on that you wanted to be applied in the 103 analysis didn't include the single chip issue. There was no debate back and forth on quo. The single chip issue struck me as this background noise over here that was sort of created to be able to show, well, there's a big difference between their invention, which is multi-chip, and quo, which is single chip. But the actual pieces of quo that you were citing that you wanted to get into a 103 analysis are clearly identified, identified by the board in the Kickstarter analysis, right? So in order for the patentee to succeed, he needs to neuter each of the elements of quo that you're serving against him because that's the way the statute works. Yes, that's correct. And a single chip, multiple chip has nothing to do with that. Right. No, no, no, that's not true, right? I mean, you were relying on quo as showing a single chip. I would say. Not in your 103 analysis. No, in the 103 analysis, we were relying on it showing. You were cherry picking. So assume quo has 10 limitations, and you pick three of them out, and you said you put those three in a combo analysis, and the patent is dead. Correct. You didn't pick out, oh, quo is a single chip invention. I think that we did describe that was the reason we used quo, so. Why wasn't that done in the analysis by the board on the Kickstarter? So the board on the Kickstarter found that nothing about the layout of the hyperdrive device could be determined from that photo. And it's the specific configuration of what are essentially known computer technology that make up the claim of the 429 patent. And so what we had in Quan and O'Shea was the majority of the claims, they were just silent on how the hub worked, or whether or not there was a video attached to the hub. And so those are the things that we pulled in from Quan. Quan had more specifics about the layout of what they called the control device or the hub of theirs. So the AIA was passed a long time ago. There's a long history of IPRs, right? And other than this case, in my research, there's only ever been one other case that presented a sale, and it's Wilson, right? Are you aware of any other cases? I was not aware of any other cases. So in all these years, this issue has only come up twice? It's not a very commonly used example. What I'm trying to get at is whether there's a screaming urgency for us to be required to delve into the niceties of what kind of a sale will qualify, if this case can be disposed of either on the single chip or on some other ground. I think that it can. I think there are a number of off-ramps other than whether or not the public disclosure. One that we haven't discussed today is the discussion that appellant is using to try and show what the hyperdrive disclosed is an undated picture and an undated block diagram when there's ample evidence in the record that there was a change in the device between the Kickstarter device and what is being sold today. And there's no evidence to indicate that the block diagram, besides a self-serving statement by, I believe, Mr. Chen, that the block diagram is exactly what was available as of the effective filing date of Quo. And the board made a finding that it looked at the picture that was on the Kickstarter and it looked at the other picture that was being presented and said these are not... And that's not on appeal. Yeah, nobody's arguing about that. And so what you have in effect is a sale, which if you assume is a public disclosure, and then backdating what they're selling today to that sale with no evidence that that's what... They seem to be relying on the Kickstarter campaign documents to show what was sold, but that doesn't make a lot of sense when the board found that that's not sufficient, right? Well, they found, A, that's not sufficient because it doesn't disclose what you were talking about, Judge Solis, the subject matter as opposed to under on sale on 102A, the claim convention. But then the other issue is that's what we know was being sold or was available, whether it was part of the sale or not, on December 6th, a few days before Quo was filed. The other evidence that they're using, we have no evidence to indicate that is the same as the device that was available on December of 2016. Okay, so just to be clear, you have no interest in the validity of the 429 patent because you have a covenant not to sue you on that? Correct. Okay, thank you. Mr. Little, you have a minute here. Thank you. Referring to your Honor's question earlier regarding the evidence that the hyperdrive contains a single chip BTCM, there is some evidence in the system block diagram that my colleague just referred to which presents the Look, I'm not going to interpret a diagram. Do you have expert testimony? Your Honor, I was not able to locate expert testimony in the pages of the appendix that were submitted to the court. I don't have that. But the question of whether the number of chips in the hyperdrive DTCM versus Quo's DTCM is sort of a side issue in this case. First, as we explained in the briefing and as you were discussing with my colleague, Quo discloses that there are multiple chips in the drawings and there is really no other disclosure in Quo to suggest that there is a single chip doing all of this work. Therefore, for that reason, at least that reason, If you have a fact finding of the contrary by the board? Yes, Your Honor. Unless you're going to be able to show that that fact finding should be ignored. Your Honor, respectfully, we don't. It's a high hill to climb. Your Honor, it is a high hill to climb, but the drawings in Quo show multiple units inside the disclosed control module.  And then on the drawing of the circuit board itself, it shows four separate chips. Okay, I think we're out of time. Thank you. Thank both counsel. The case is submitted.